The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. Good afternoon. We'll first call 4-22-1003, Melissa A. Appellee v. Cameron P. Appellant. Counsel, for the appellant, would you please state your full name for the record? Yes, good afternoon. Tyler Slack for Cameron Pauley, who is the appellant in this matter. And counsel, for the appellee? Michelle Buckwilder Sherman, attorney for the appellee, Melissa Aldridge. Very well. Thank you both. You may proceed to argument this time. Thank you, Your Honor. May it please the court. This appeal comes from a trial court decision um that modified a previous custody order that had been entered in the state of Ohio. My client is Mr. Pauley and the other party is Ms. Aldridge. They have one child together. His name is Colin. Colin is seven years old. He will turn eight years old on July 4th. The parties had an in 2020 that provided them 50-50 parenting time. After entry of that order, Ms. Aldridge moved to the state of Illinois in Carroll County, in residence in Carroll County. And during that time, for an extended period of time, Mr. Pauley had primary parenting time. Ms. Aldridge was caring for her mother and as stated in the trial court's decision, from about July 2019 until the summer of 2020, my client had primary parenting time. The parties then started using the 50-50 parenting time again thereafter. That all stopped in August of 2021 after Ms. Aldridge enrolled the minor child in school in Carroll County. Now that was done without court order and without a petition pending. So counsel, excuse me, good afternoon. At the hearing, however, wasn't there a testimony that she had fully expected that Cameron, your client, would have enrolled the child in school in Indiana but instead returned him to Illinois to her on August 14th and that she was aware that the school code in Illinois required that he be enrolled in school given his age and school in Illinois at that time was due to start August 20th. Isn't that what the testimony at the hearing showed? So Ms. Aldridge did testify. She assumed that Mr. Pauley would enroll him in Indiana. However, your honor, the order that was entered in Ohio stated that if the parties could not agree on where the child was going to go to school, they would let the court decide and my client filed a motion to modify the parenting time and for placement of the child in Indiana schools in July of 2021. He was the first party to seek any relief from the court regarding school and that petition. That was dismissed. He dismissed that petition, did he not? That petition was dismissed in October of 2021 after Illinois court had accepted jurisdiction of the case but it was pending on August 20th, 2021, when Ms. Aldridge enrolled the child. Ms. Aldridge testified she knew about getting that petition and the petition was actually set for hearing on the same day but was never heard. And then subsequently there were cross petitions to modify the parenting agreement filed in December of 2021 here in Illinois. Isn't that correct? That is correct, yes. All right and as part of your argument in your brief, you discussed one of the factors of the 17 that the trial court used in evaluating the claims here. The factor, I think it is B3, the amount of time each parent spent performing caretaking functions with respect to the child. With respect to that, I have a question and that is what authority do you have that the trial court was required to use the July 9th date that you suggest? When the petition filed, I'm sorry, when your client filed the petition in Ohio to modify the judgment, what factor or what authority do you have to suggest that it would be that date, July 9th, as opposed to the December 3rd date? Yes, thank you for that question. It is language in the statute, your honor. That is the authority I am relying upon. I am not aware of any appellate court cases that have interpreted that specific factor 602.7. We're looking at the best interest factors that you mentioned. 602.7 B3 and that specific provision talks about any this has to be a petition that was filed in Illinois. It does not specify it has to even necessarily be a petition that is pending. And looking at the other cases that have interpreted statutes, it is clear the court is to interpret that language broadly when you're dealing with the best interest of the child. The point of that provision is to say, look, the trial court wants to know what were these parents doing for the 24 months before anybody came to court? What is the courts before anyone filed the petition? And in this case, the status quo had been my client had been the primary caretaker for the year for a year and they had split 50-50 parenting time for the other year. But I don't see why the trial court would not use that date, the July 9th, 2021 date when my client came into the Ohio court asking to modify the parenting time in for placement in why we would not use that as the set the timeline. We should go 24 months. The trial court did find that that factor slightly favored your client, did it not? It did, but I think it heavily favors my client. Okay. And so if indeed, let's assume that it heavily or more heavily favored your client, how would that have impacted the result here, given the fact that we have 16 other factors that the trial court was to look at? Great question. This was in a very, very close case as the trial court indicated. Okay. The evidence was very balanced. In fact, the guardian in this case didn't even provide a recommendation. She just said in her report, you're going to have to have the judge decide this. It's so close. I don't think I've ever had a case where a guardian has done that. When we looked at the factors in the court's analysis, there's only, it only came down to three. He found two slightly were in favor of Ms. Aldridge. He found one was slightly in favor of my client, which is the factor you've referenced. If he had found that factor heavily favored my client, that could have changed the entire scale of where the court was going to go with this. And I think in this sort of a case, it's incredibly important to mention that the status quo before the parties came to court was my client was the primary caretaker. And that was, I'm sorry, that was because of the pandemic. That was also because of the fact that Melissa's mother had had a stroke and that she was caregiving and also that she contracted COVID. And so they had certainly arranged for Cameron to be the primary caregiver mutually given those circumstances. Isn't that correct? COVID was a factor. You are correct. But again, this started in July of 19. So even before COVID, Mr. Pauly was the primary caretaker during that time. Right. But well, let me ask you one other question. Didn't the court also have to consider in making this decision that Melissa was the primary parent from August, 2021 on? I believe it was an error for the court to rely on that of the fact that she was exercising the primary caretaking functions against court order. The reason why she was primary was because she enrolled the child in August of 2021. Again, without a petition pending, seeking for placement in Illinois and without court order, the Ohio judgment set out a procedure. There was an agreement about how they were going to decide where this child was going to go to school. My client was following that procedure. He filed a motion in the Ohio court. He did not act unilaterally. I'm sorry. Go ahead, Justice. I'm sorry. Justice Lambert had a question. Go ahead. Two things. I guess my first question is, I know you talk about the phrase in that order. And while it does indicate if the parties cannot agree that the court could make the decision, but it does not necessarily indicate that the that decision would be made for all practical purposes if they don't agree and don't go back to court and this child is not enrolled in school at any point. So that's question one, I guess. I know you say it's prohibited and I understand your client's interpretation of that, but I don't know that the language specifically indicates a bar. My interpretation of that language is that you need to receive court approval. Otherwise, it's meaningless. Otherwise, I'm not sure why it's in there. Then it's just whoever makes the first move first, which my client could have done. He could have violated the court order and this would have been a very different case. But to his credit, he didn't. He has followed the rules throughout his entire life. He's from the military. There was an order in place. He followed the court order and he followed that procedure. Ms. Aldridge did not. And she could have filed the petition. If she knew she was going to do this, she could have filed the petition months before she enrolled the child. But the most important factor here is she didn't tell my client that she was going to enroll him until the day of school. She could have easily have given him advance notice, I'm going to do that. And although the court mentions that in the decision that she admitted she told him the day of, he did not consider that in his analysis of the factors. He did not consider the fact that she waited until the start of school when my client missed out on an opportunity to be a part of that event, to talk with his child about starting school, to meet with the teachers. That was not mentioned anywhere in the court's analysis. So I think I understand your point. I understand your point and perhaps we have different interpretations of that language. But that doesn't stop Ms. Aldridge from still filing a petition, which she didn't do before she enrolled the child. One follow-up. At the time the December petitions were filed, because the Ohio petition had been dismissed, at that time was there any petition anywhere pending? Well, I believe that the, and I talked about this in my reply brief, that the petition that had been filed in Ohio was adopted with the court's enrollment of the judgment. There was, it was presented as evidence at the hearing on the enrollment. There was, I did, there was some argument and some what seemed to be concessions admitted by Ms. Aldridge's attorney at that time that the court should consider that petition as part of the Ohio or as part of the Illinois case. So I believe that when the court enrolled the judgment, it was also enrolling that Ohio petition. And that Ohio petition was filed in Illinois and it's file stamped September 10, 2021. So it was filed with the Illinois court prior to the dismissal of the petition in Ohio. Thank you, counsel. Well, counsel, let me ask a question then, just going back a few moments, and that is, would I be incorrect in understanding the facts that the child was enrolled approximately August? There's nothing in the record, basically my question is this, I'm just setting it up. There's nothing in the record to suggest that you know of that the mother had been planning for a period of time to enroll the child without notice. You know, that's a good point because all that's in the record is the first day of school, August 20th, 2021. And that would have been the first day of school. But obviously when you enroll the child in school, you typically do it maybe weeks in advance. So I don't think the record indicates when that actually happened, but I think that is a good point that probably actual enrollment would have occurred before the hearing, but it's just something I've not read anywhere. I'm not hearing the argument. It seems like the child's going back and forth, and August is not enrolled in school. Mom's aware that the Illinois law that child should be enrolled, so she enrolls the child, which is, it's almost that hot potato situation. She's got the child, she enrolls him. I was just going to have to speak to that because that's something that for whatever reason occurs to me. Well, I believe my client would say he was under the impression because he had a petition pending in Ohio, and Ohio still had jurisdiction of the case, that this was going to be decided in Ohio, and he was following the procedure. She never, there was an exchange on August 14th, and Ms. Aldridge could have said, hey, I'm going to enroll him at the exchange, but she didn't. She waited until the first day of knowing it would take months for them to go to mediation, to go through a GAL investigation until we would get to final hearing, and by that time, they've established a new status quo. He's been in school for a year, but the statute 603 or 602.7b3, that's why the court's to look at the 24 months before any petitions are filed. That is the relevant time frame, and that's where I think the trial court respectfully made an error. It should have used that July 2021 date and then looked back the preceding 24 months, and if it did that, it would see that Ms. Aldridge had never been the primary caretaker during that time. My client had been the primary caretaker for a year, then they had done 50-50, so I do see this decision as a reversal of the status quo. I do. Now, counsel, with respect to when this petition was filed in Ohio, we're talking about July 9th, 21. School usually starts in August, or let's say the latest Labor Day. Your client knew that the child was living in Illinois at this time, and he also had his own ideas, or opinion, I should say, not just ideas, opinion, that his start at school should be delayed, and so he didn't, based on, I guess, an evaluation, didn't think, he didn't think the child was ready, but the fact is he waited until July 9th, as you yourself just indicated. Resolution of this would have taken months, and yet Melissa was faced with the situation that the child was returned to her August 14th. What was she to do? So it is not quite as clear, at least as I see it, as you want to make it out to be, and the trial court, again, had to look at certainly what the status quo was prior to the hearing on the petition, but there were a lot of nuances here, and it wasn't quite so straightforward, I think, as perhaps you argue in your briefing today. Just one correction. They were doing 50-50 parenting time up until August 2021, so when my client filed his petition, they were still doing off and on 50-50. It was only until after the child was enrolled that necessitated, once he's in school, obviously he's got to go to school, you can't do 50-50, and my client did file a petition July of 21. I understand your point that maybe that was not enough time before start of school, but at least he filed the petition. Ms. Aldridge never did. Yeah, and I guess the problem is that even if you're arguing for a 50-50 custody arrangement, I mean, how could that not be subject to a residency requirement of a school code? I mean, if we look at this under that theory, is the minor a resident of Indiana? Would the minor be a resident of Illinois? It isn't so clear. The child has to reside somewhere. The child resided in Illinois and therefore had to be subject to the school code. Isn't that correct? Well, I don't. I think that in my experience, a court order, the terms of a detailed custody judgment are going to be what the court needs to rely on, and in this case, there was a procedure already spelled out in a custody order saying you're trying to reach an agreement. If you can't reach an agreement, you allow the court to decide, and that is what my client was trying to do. He filed the petition and was attempting to have a hearing in Ohio. It didn't happen because of the jurisdictional issues, and the court case was ultimately bumped back to Illinois, and by that time, it had already been an extended period of time. I don't necessarily think that school code that you're referencing is going to trump a custody order, because if that is the case, then in any situation where you have parents in different states, where school is going to start at different times, that could be a lot of trouble depending on, well, you know, I violated the order, Your Honor, but in Florida, I have to enroll the child earlier than in Tennessee. It's always going to be the more specific custody order, in my opinion, that should control. We don't. We only have about, you only have about two minutes left. I had another question regarding the contempt proceedings. If we hold that the trial court's denial of your contempt petition was against the manifest weight of the evidence, what relief are you seeking? Thank you for that question. So the, in that petition that I filed, I did reference the statute. It's a contempt petition, but it also referenced section 607.5, abuse of allocated parenting time, because it is, part of that petition was the fact that the court order regarding parenting time and placement was not being followed. Under that statute, it talks about what type of relief that the court can offer you when there is a violation of a parenting time order, and one of them is imposition of additional terms and conditions consistent with the court's previous allocation parenting time or other order. So obviously the relief we're seeking is that the court were to modify the terms so that the child is to go to school in Indiana. And we, I believe there's authority to do that under that section of the statute where the court can change parenting time orders based on violations of parenting times orders. So we are asking that. So you're asking that despite the fact the child is doing well in school, well adjusted, doing well in every other way, that nevertheless is what you're advocating the, should be done, is that correct? Out of school in Illinois and put them in school in Indiana? If I can speak to that, that would be the request. We would want that to occur over a break after he has, for instance, after he's completed this year and then over the summer transition to school in Indiana. But I do want to mention, and my time is running out, can I finish this thought? Please finish, yes. Okay, that after the child started school on August 20th, my client was faced with a situation where he could have gone forward with some sort of emergency motion shortly thereafter, once Illinois had jurisdiction of the case during the school year. He chose not to do that, did not want to have a the case and the child could get pushed back to Illinois again. He was sensitive of that. So if there is going to be a change, we just want it to happen once. We are asking that he go to school in Indiana, but it would occur over a summer break. We are not advocating that he'd be pulled during the school year. Thank you. Very well. Thank you, counsel. All right. All right. Counsel for the appellee, you may argue. Thank you, your honors. I appreciate it. Good afternoon. If it please the court, counsel, you've hit on the real big crux of this case. This is a very date-specific case. So I want to kind of go down that timeline real quickly, so we have that clear in the record. Before you do that, counsel, and I'm sorry to take you off your rhythm, but I just want to ask a question while it's fresh in my mind. This record appears as though you have two parents working, and I don't have a whole lot of experience at the trial level with family cases, but they seem to work very well together. Correct. Based upon everything I reviewed. There's one issue that has concerned me, and that is, you know, the emergency motion is not brought by counsel. Counsel early on files the petition, seems to be doing everything the right way, but during this August or July handoff, whenever it was, there was no notice given to the father that potentially the child would be enrolled in school. Did you want to speak to that? I certainly can. The child was in father's care on August 11th when school started in Indiana. He returned the child to mom on August 14th. School didn't start in Chadwick-Milledgeville until August 20th, so within that time, my client, who is clearly a resident of Illinois, she had filed an intent to relocate in the Ohio court back on April 17th of 2020, so she's clearly a resident of Illinois. She's clearly subject to the school code. This child already had been held back by the parents and by agreement not to school the year prior, even though he would have met the minimum age requirements, but at this point, we have a child now who is six years old and still hasn't gone to school, and it's required under the statute. At that time, remind me, your client, is she alleging a lack of notice of the pending petition in the other state? The record is silent as to that. We know that a petition was in Ohio on July 9th of 2021. We honestly don't know. We know from the record that the father moved to Indiana April 1st of 2021, giving no notice to the Ohio court. For whatever reason, we know he filed three months later in Ohio when clearly no parent lived in Ohio and the child was not in Ohio. He files this petition to modify. But the order was in Ohio, is that right? That's correct. The order was in Ohio, but at that point, no one lived in Ohio. So then, mother files a petition to enroll on August 3rd of 2021, and that's enrolled but later vacated by motion of the father. So then, a full hearing is had and after a hearing on October 14th of 2021, the court enrolls the Ohio order. The record is silent as to when. We know in October of 2021, pursuant to the father's testimony, that the Ohio motion that he had filed had been dismissed. The record is silent as to whether that was before or after the Illinois court enrolled it on October 14th of 2021. We have no explanation as to why the child at this point would have already been in school for two months, and yet another two months after the enrollment nearly go by before either parent, but in this case, certainly father, files any kind of a motion in Illinois, and they both file on December 3rd of 2021. In that time, father is fully aware that this child is going to school in Milledgeville. In fact, he acquiesces to that. They meet in Kankakee between the two residences. He has every other day FaceTime, one to three hours a day. He has weekends, what we'll call a jumbo weekend, where if the child has a Friday or Monday off of school. Each time they meet, each time he returns the child. At no time does he enroll the child in Indiana schools, and again, there was no court orders that would have prevented him from doing so. Bottom line here is that this father had as much time as possible considering the distance between these two parents, and the child's almost through a semester of his kindergarten school year before father files a motion requesting that the court address this issue of where should this child be going to school, and at the same time, files a motion claiming after the child's been in school for four months that mom should be held in contempt of court because she's enrolled this child as he sees contrary to the Ohio order. Go ahead, Justice Enoff. I wanted to ask, the order that was entered originally did require, as opposing counsel argued and indicated, that a court order was required if the parties could not agree on where the child was to go to school. So in essence, it was a precondition, was it not, for enrolling the child in school. I disagree. Yes, it said if the parties can't agree, then they're going to need to come to the court, but it didn't say that mother or father should violate a law in the state in which they reside in order to comply with that. The statute would override that order. But she never sought an order. I mean, she filed the same days. Yeah, you're correct. She filed on, ironically, the same date that he did, requesting that the court resolve the issue. But again, the delay on both parents' part shouldn't be this child's He's in school. He's doing well. The father, again, is returning the child each time the parents are working together. He's engaging with the school. This child deserves and continues to deserve. Now he is nearly completing his first grade year of school in the same district and doing well. This is a child that should remain there. And that's why when the court looked at the 17 factors, it really placed a lot of emphasis on the last 17, the factor, kind of the catch-all. And that's to, we can't ignore the fact that this child resides where his father grew up and his mother, where both families, both parents have extended family in the area. And he was doing so well in school. The court got to hear from his teacher, his daycare provider, the mother's mother's co-people that she works with to see what kind of life is this child leading. And there was no allegations here that there was any abuse, that there was any neglect, that mom was doing anything but the best job. And that mom was going above and beyond in making sure this child had regular contact with dad. Like I said, an hour to two hour FaceTimes every other day that he knew everything about school. He knew everything about medical and that's uncontested. Father admitted to having received all of that information. So this judge couldn't ignore the fact that this child has gone to school in this district, has done well, and the parents have worked together for his best interest. So- Excuse me. To some extent though, and going back to appellate counsel's argument, the language in the order, if we look at that to give it a purpose, she knew she had to file the notice to make her move. And she did that when she was moving to Illinois. She's aware of their agreement to have purpose. I mean, isn't she taking advantage of the fact that she did not comply with the terms of the order and she was simply the first to enroll the child. And so now she's receiving benefit and consideration because she took the first step without waiting on a court ruling as has been argued would be required in their agreement. I disagree. I don't know that she could have told the future that it would have been that father would have dismissed his motion to modify. In other words, this child could have gone to school for a matter of a few weeks before it was resolved. It wasn't. Father dismissed the Ohio petition. He fought the enrollment originally of the Ohio order. And so it is the four months that passed the semester that the child completes is really on father. Why didn't he? The record's silent. Why didn't he get it set for hearing? Why didn't the hearing happen in Ohio? But again, the mother had a requirement to comply with the state law. Did she know that we would be here today almost two years into it? No, but at least she complied with the statute, got this child in school, and then sought the modification on the same day dad did. So we can't really say one is any worse than the other. If dad's dismissal of the Ohio modification petition was in October, why did it take two months? If this was an issue that he felt needed to be addressed, that it wasn't in his child's best interest, then why did he take two more months after the enrollment before he filed his motion? You don't accept counsel's argument that there was not a desire to disrupt child's education and uproot them at that point with an emergency motion or something like that? I think he knew this is what was best. I think he acquiesced to that. I think he grew up in this community. He knew what his child was getting. He talked with the teachers. He knew what he was learning. He saw the advancements in his child because they did have testimony, as Judge Zeneff noted earlier in counsel's argument. They did have concerns about his development, and yet he flourished when they got him in there. The I don't buy that argument. I think that father sat and waited and saw that things were going well and then got to a point where he filed this motion. It's really unclear why he wouldn't have done something sooner. But again, what I know we'll focus on is what's in the best interest of this child. He needs to be the one to consider, and that's what Judge Brinkmeyer did. Judge Brinkmeyer is the one to consider, and that's what this child has been. Again, why did father wait so long? I don't think it's just because he felt that he was already in school, and so let's just let that get started. Why wait? If you knew the matter was going to take years potentially, then why wait? Why not file very quickly after the enrollment on October 14th? Why wait another two months? That just doesn't make sense for his timing as to why he would simply wait. And if he thought, well, maybe I can get it done before the semester, at that point he'd been involved in courts from Ohio to Illinois for almost two years. So at that point, he knew the system wasn't going to work that quickly. In other words, we weren't going to get a resolution filing a petition to modify on December 3rd and have it resolved before Christmas break was ended. So it doesn't make sense. But counsel, when we're talking about waiting, your client waited until June of 2021 to enroll this Ohio judgment here in Illinois. Isn't that correct? That's correct. But also knowing, I assume she had, I'm not sure the record shows this, the legal advice regarding when school started or what the school code required here in Illinois, but she knew that school started in Illinois in August 2021. How would she have, I mean, she waited that long to enroll the judgment here. She certainly did wait. However, she filed it, had it enrolled so that she could proceed on a petition to modify. Again, that was heard on August 3rd, which was then vacated, which delayed the proceeding of nothing on her part of father fighting the enrollment itself, which then continued things out another two months before we could even get the Ohio order enrolled here in Illinois so that the petitions to modify then subsequently could be filed. But you're right. The record is silent as to why he didn't proceed in Ohio. When exactly did Ohio dismiss? But this 24 month look back period in part B of the factors and looking at what's in the child's best interest. The court properly determined that from December 3rd of 19 through the date of the filing. The dismissal. What about, I'm sorry to interrupt, but what about the argument that the statute provides the authority and says any, that we look to the words of the statute and it's any petition that has been filed. If we look at that, why isn't the petition that was filed earlier in Ohio? Because it was dismissed. It was dismissed, so it's no longer a pleading in the file. So that's why we wouldn't look to it. And when we dismiss, that would be to say, what if it had been filed? What about the original filing in Ohio? Would we still consider that when it's already been adjudicated? It's been adjudicated by the prior to a dismissal of emotion. The record again is silent as to why it was dismissed, but certainly this court should not look back to a period of time prior to a dismissal of a petition. So I it's any petition, but it doesn't say any petition that's dismissed or any petition that's been adjudicated. The dismissal makes it different, and therefore I believe the case supports that December 3rd of 19, which was two years exactly prior to the filing of the petition to modify, is the relevant period for the court to look at. And I'll say this, even so, as I believe it was you noted in the appellant's argument, the court gave him that factor and said, you know, that slightly favors him. And another factor favored her, but the bottom line went to that all 17 together, especially that 17th factor that said, we've got to consider what this child has done. He's flourished, he's near family. So, you know, to say, well, I think if that one would have been strongly in favor, that would have made the difference. Judge Brinkmeyer properly considered the evidence and the factors. He was balanced and measured. He allowed the vacate. He allowed this appellant to come into court and argue over the enrollment. This decision was made, and it was not against the manifest way to the evidence. The stability of the child is the major factor when we consider a custody award. And that's that sense of continuity, the absence of change. So there's nothing here to suggest that this child is doing anything but quite well, that mom has been more than accommodating. I think it's extremely unusual. I think the court noted it as well as the guardian ad litem in her testimony, that for mom to have the child speaking to dad on FaceTime and seeing him once every other day for one to three hours, this is a good parent. This is a parent who knows her obligations to a child who had to go to school. It was time to go to school. He's at the compulsory age. Both parties, perhaps you could say, delayed in proceeding, but this child should not be the detriment of that. This child's doing well, and he should continue. Yes. Counselor, you just alluded to something I don't think has been really spoken about, and that is that parents both felt the child perhaps was a little delayed and were holding off putting him in a school. I think there was an agreement that perhaps he didn't go when he could have gone prior to this. So if you go down that route, there may be an argument that dad was uncertain if the child was going to be going to school that year. I don't know. I didn't do any research as to what the compulsory ages in Ohio or Indiana or Colorado are. The appellant provided no evidence at the trial of any delays this child had. The only evidence we had was both parents indicating he was doing well in school and his teacher who testified that he did well, that he was up to the standard of the rest of the children, if not better. So whatever delays the parents decided the year prior, those have been dissuaded, and now we know the luck of having time behind us now. We know that this child is right on track. He's doing quite well, and so those issues, again, there was no testimony, expert testimony, nor did the GAL note any kind of delays of the child himself. I don't disagree. I don't accept that. I don't disagree with any of it, although we were looking at, in my statement question, we were looking at the time period of the drop-off of the child in August, July, whatever that was, when there was a real question as to where and when the child would be going to school. To me, that makes sense in that your opponent's client filed the petition, was still uncertain when and where the child would go to school. That's the reason I bring it up, and you're welcome to speak to that. Yeah, again, I go to, Mr. Pauly, the father cannot continue to say, well, I filed a petition, but I'm doing nothing with it. I've allowed it to be, it was dismissed, or I allowed it to be dismissed. I failed to file a motion, and now that my child's in school and doing well, now on December 3rd, I'm going to file a motion to say, well, she shouldn't have done that. She should be in contempt, and you should ignore how well the child is doing, because I should just win, because she didn't follow the order to the T. However, as I've noted, and I know we've said it over and over, that is, this child was at a compulsory age. She would have otherwise had a truant situation, and the court made that specific finding in his ruling. I find your criticism of the father difficult to accept, because the goalposts were moved when the child was enrolled in school in Illinois. He had filed a petition in anticipation of seeking placement of the child, so I'm not sure that that's... Yeah, with all respect, except he did that on July 9th in Ohio, where nobody was living, a mere month or so prior to school starting. So again, it just doesn't... If he was that interested, he would have gotten things moving much sooner than that, and in the proper court. Very well. Thank you. I took some time with some questions there. Anyone on the panel have any additional questions? No. Okay. Thank you. Yes, just briefly. I just want to address that, because the council spent a lot of time on the timeline here. I'm going to be clear as well for the record. The motion that my client filed in Ohio, he filed that on July 9th, 2021. That motion that was filed in Ohio was admitted into evidence at the hearing on the enrollment on September 3rd, 2021 in the Illinois court. And that Ohio motion was filed with the Illinois court on September 10th, 2021. And the specific record citation is in my reply brief. So the court was well aware of that motion. Everyone has been aware of that motion. It was filed in the Illinois court. I don't want us to just ignore that motion, which I think is what the problem with this case is. He filed- I'm sorry. I need to interrupt here though for just a second. He contested at that point jurisdiction. And so that order initially enrolling that judgment was vacated, right? It was vacated. It was vacated. Yes. I won't go into the details of why it was. That's in record. But yes, that August 3rd order was vacated and then there was a hearing. Okay. Thank you. Hopefully you still have your train of thought. I'm sorry. I think we've all hit on the main points. The difficulty here is that what could have happened is if my client had done exactly what Ms. Aldridge had done, he would have just enrolled the child on August 10th in Indiana without a court order. And I think counsel's arguments would be the opposite of what I'm arguing now. And I just don't think that is what our statute is intending is sort of the first to file, first to make the move. That really shouldn't be who wins the case. We need to, especially when we have an order. This isn't a brand new case. There's already an order in Ohio that the parties agreed to that says, this is what we have to do. My client is following that order and Ms. Aldridge did not. And he should not be penalized because he didn't make the first move. He was waiting on the court to do that. And that's why that 24 month period is so important. We have to look from the date he filed in July of 21 for the 24 months proceeding. And it's a very close case. I mean, and the court said- It is. And that goes to my next question. It was a very close case. We have a trial court that made that decision, certainly looked at the credibility of witnesses, and that's the job of a trial court. In your argument to this appellate court that the trial court improperly analyzed these factors, are you not? And the factors we're talking about are the 602.7 factors. Are you not asking this to reweigh the evidence? And that is something we cannot do. You're correct, Judge, but you can remand with instructions for the court to properly apply the factors. I'm concerned the court may have read that portion of the statute about the 24 months and misinterpreted, misapplied it. And if perhaps he is advised by this court that he needs to use the 24 months before July, that could change his overall analysis in a case that's so close, like this. And I think also the trial court needs to consider, it was not considered in his analysis, was the fact that Mr. Pauly didn't get notice of the enrollment of school. And that's one of those factors, 17, the catch-all factor. He didn't put that in his analysis. And I think that the court should relook at that and then weigh the factors after he does that. I wasn't talking about notice. I mean, didn't he have actual notice? He saw the school or isn't that what the record? I don't believe the record supports that Ms. Aldridge in fact testified. She told him the day of, so he knew the day of. My client testified. He found out the child was attending school the first day of school. That was the first notice he got. He was shocked and it's unfortunate that that occurred. So respectfully, I thank all of you for your time considering this. It is a difficult case. I understand that, but we are asking that the case be reversed, that the decision be reversed, that be remanded with instructions. And if there's any other questions, I'd be happy to answer them. I see none. Counsel, thank you for a well-argued case. Thank you both. The court will take this matter on advisement and now stands in recess.